UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DOROTHY A. ABBOTT, ET AL                    CIVIL ACTION

VERSUS                                       NO: 17-01604

UNITED STATES OF AMERICA                     SECTION: "H" (4)


## ORDER AND REASONS

Before the Court are Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. 30) and Motion for Summary Judgment (Doc. 29). For the following reasons, the motions are GRANTED.

## BACKGROUND

This survival action arises from injuries that Elmer Abbott sustained at a Transportation Security Administration ("TSA") checkpoint. The following facts are undisputed.[1] On February 26, 2015, Elmer was travelling through the Louis Armstrong New Orleans International Airport on his way to Virginia. Elmer, 87 years old, was travelling with his wife Dorthy Abbott, his daughter Sherrie Abbott Flowers, his granddaughter Megan Flowers Mawyer, and

---

[1] *See* Docs. 29-2, 38-2.

1

Megan's husband Robert Mawyer. As Elmer proceeded through the TSA checkpoint he was seated in a Drive Medical Duet Transport Chair Rollator, model number 795BU ("Rollator"). The Rollator includes a fabric pouch located under the seat that may be accessed by lifting the Rollator's seat or unfastening one of the three metal snaps located on the Rollator's rear-facing side that attach the pouch to the metal frame of the Rollator.

TSA employee Emma Ryks screened Elmer and his Rollator. Ryks intended to screen the Rollator's under-seat pouch by unfastening one of the snaps, meaning that Elmer would not need to exit the Rollator. Ryks informed Elmer that she was going to screen the under-seat pouch before she did so. Ryks positioned herself behind Elmer and crouched down to face the Rollator's seat. Shortly after, Elmer fell out of the Rollator, striking the ground and sustaining injuries.

Elmer died in 2016 of causes unrelated to his injuries at the New Orleans Airport. Plaintiff Dorthy Abbott—Elmer's widow—and Plaintiffs Michael Abbott, Daniel Abbott, Lynnette West, Clinton Abbot, and Sherrie Flowers—Elmer's children—bring this survival action against Defendant United States of America for the injuries that Elmer sustained.

Defendant moves to dismiss any claims that Plaintiffs assert for their own damages because Plaintiffs failed to exhaust their administrative remedies before filing suit. Plaintiffs do not oppose the Motion to Dismiss, conceding that they bring only a survival action to recover for Elmer's damages on his behalf. Accordingly, Defendant's Motion to Dismiss is GRANTED.

Defendant also moves for summary judgment, arguing that Plaintiffs can produce no evidence that Defendant breached its duty to Elmer or caused Elmer to fall. Plaintiffs oppose the Motion for Summary Judgment.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3] In a bench trial, such as this, "a judge [also] has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the

---

[2] FED. R. CIV. P. 56.
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Lyles v. Medtronic Sofamor Danek, USA, Inc., 871 F.3d 305, 311 (5th Cir. 2017) (quoting *In re* Placid Oil Co., 932 F.2d 394, 398 (5th Cir. 1991)).
[5] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[6] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[7] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

nonmovant would bear the burden of proof at trial."[8] "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[9] Nor does the Court, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[11]

## **LAW AND ANALYSIS**

Plaintiffs have sued Defendant United States of America under the Federal Tort Claims Act for events that took place in the Eastern District of Louisiana.[12] This Court therefore applies Louisiana law to determine liability.[13] Louisiana employs the duty-risk analysis in tort cases, under which Plaintiffs bear the burden to prove that:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).[14]

---

[8] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[9] Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 164 (5th Cir. 2006).
[10] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[11] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[12] *See* 28 U.S.C. §§ 1346(b), 2674 (2012).
[13] Alexander v. United States, 605 F.2d 828, 832 (5th Cir. 1979) ("[Liability under the FTCA is governed by state law . . . .").
[14] Audler v. CBC Innovis Inc., 519 F.3d 239, 249 (5th Cir. 2008) (quoting Lemann v. Essen Lane Daiquiris, Inc., 923 So. 2d 627, 633 (La. 2006)).

Both Louisiana courts and federal courts applying Louisiana law routinely grant motions for summary judgment dismissing tort claims when plaintiffs cannot produce evidence of all five elements.[15]

Defendant argues that Plaintiffs have no evidence that Defendant either breached its duty to Elmer or that any breach was the cause-in-fact of Elmer's injuries. There is no dispute that none of Plaintiffs' witnesses have personal knowledge of what caused Elmer to fall.[16] TSA agent Ryks testified that Elmer fell out of the Rollator before Ryks got a chance to open or screen the pouch.[17] Ryks unequivocally testifies that she did not lift up the Rollator's seat or push Elmer out of the Rollator.[18] In a statement she wrote shortly after the fall, Rykes says that she had not even started to undo the pouch snap when Elmer fell out of the Rollator.[19] Surveillance video of the TSA checkpoint captured Elmer's fall.[20] The video shows Ryks crouching down behind Elmer seated in the Rollator. Elmer appears to turn his head back toward Ryks and make a

---

[15] *See, e.g.*, Brown v. United States, No. 16-8954, 2017 WL 3267337, at *2 (E.D. La. Aug. 1, 2017) (dismissing premises liability claim on summary judgment because plaintiff could produce no evidence that the dangerous condition existed for any length of time or that defendant had notice); Lucas v. United States, No. 16-5009, 2017 WL 1549547, at *4 (E.D. La. May 1, 2017) (Fallon, J.) (dismissing medical malpractice claim on summary judgment when plaintiff could produce no evidence that doctor breached standard of care); Broussard v. Retail Inv'rs of Tex., Ltd., 123 So. 3d 912, 917 (La. App. 3 Cir. 2013) (affirming summary judgment for property owner when plaintiff could not offer evidence of what caused her fall); Jackson v. Home Depot, Inc., 906 So. 2d 721, 726 (La. App. 1 Cir. 2005) (affirming dismissal of negligence claim because plaintiff could not produce evidence that employee struck him).

[16] *See* Docs. 29-10 at 5 (stating that Robert did not see Elmer fall), 29-10 at 19 (reporting Robert's testimony that "I was not right there to be able to say this is what happened"), 29-11 at 10 (stating that Megan did not see Elmer fall), 29-11 at 25 (implying that Megan's opinion as to what happened is based on the surveillance video), 29-9 at 10, 23 (stating that Sherrie did not see Elmer fall), 29-9 at 26 (implying that Sherrie's opinion as to the cause of the fall is based on her knowledge of the chair, not direct observation), 29-8 at 14 (stating that Dorothy did not see Elmer fall).

[17] Doc. 29-5 at 9, 14.
[18] Doc. 29-5 at 22, 24–25.
[19] Doc. 29-14.
[20] Doc. 29-4 Exhibit 10.

5

hand gesture as if they were speaking. Elmer then places is right hand on the Rollator arm rest and appears to lean forward before the Rollator tips over in the forward direction, spilling him out.[21] The Court does not see any evidence in the video that Ryks pushed Elmer or tilted the Rollator. Defendants have therefore met their burden to point out the lack of evidence of Plaintiffs' claims. Plaintiffs must point to specific pieces of evidence that create an issue of material fact as to Defendant's liability in order to avoid dismissal.

The Court first observes that Plaintiffs fail to carry their burden because Plaintiffs effectively admitted all materials facts asserted by Defendant. Local Rule 56.2 requires that every opposition to a motion for summary judgment include a "statement of the material facts which the opponent contends present a genuine issue."[22] Any facts in the moving party's statement that are not controverted are deemed admitted.[23] Here, Defendant submitted a detailed list of facts that Defendant claimed to be undisputed, supported by citations to specific pieces of evidence in the record.[24] Defendant's statement of facts asserts that Ryks did not touch the Rollator before Elmer's fall and did not push Elmer out of the Rollator.[25] In response, Plaintiffs submitted a list of what they consider to be contested issues of fact, such as, "Whether or not Emma Ryks had pulled up on one of the pouch's snaps in an attempt to open it immediately prior to the rollator turning over."[26] Local Rule 56.2 requires a

---

[21] Plaintiffs agree with this characterization, stating in their opposition memorandum that, "Elmer looks back at her and appears to lean forward to get out of the way. Then, the chair suddenly tipped over." Doc. 38 at 2–3.
[22] E.D. LA. CIV. R. 56.2.
[23] E.D. LA. CIV. R. 56.2; *see also* Brown v. Brown & Williamson Tobacco Corp., 479 F.3d 383, 387 (5th Cir. 2007), *abrogated on other grounds by* Altria Grp., Inc. v. Good, 555 U.S. 70 (2008) (applying Local Rule 56.2 to deem admitted facts not specifically opposed in a statement of material facts).
[24] *See* Doc. 29-2.
[25] Doc. 29-2 at 4–5.
[26] Doc. 38-2.

list of facts, not questions. Plaintiffs have not "controverted" Defendant's statements of fact by merely saying that the issues are disputed. Plaintiffs fail to assert the contrary facts—for example, that Ryks did pull up on the snap and dump Elmer from the Rollator—and fail to cite to any evidence whatsoever disputing the evidence presented by Defendant. Defendant's statement of material facts should therefore be deemed admitted, removing any issue of material fact from this case.

However, the Court does not need to reach the application of Local Rule 56.2 because Plaintiffs fail in general to cite to any evidence creating an issue of material fact. Plaintiffs assert that Ryks "accidentally pulled up the seat causing the entire wheelchair to flip over," but cite to no evidence of this fact.[27] Plaintiffs argue that circumstantial evidence proves that Ryks started to open the snaps because the length of time that passed from when Ryks squatted down behind the Rollator to when Elmer fell was sufficient for Ryks to have started opening the snaps.[28] This theory is pure speculation and is directly contradicted by the testimony of Ryks herself. Nor do statements by Elmer's family members indicating that he could not walk or would not have attempted to stand on his own create a material issue of fact. On their own, statements about Elmer's physical abilities are not evidence that Defendant did anything. Such statements could contribute to a *res ipsa loquitur* theory of negligence by serving to eliminate other possible causes of Elmer's fall. However, the video appears to show Elmer shifting his weight in the seat, not necessarily attempting to stand. Furthermore, Defendant's expert witness determined that tipping the Rollator forward could take relatively little downward force.[29]

---

[27] *See* Doc. 38 at 2.
[28] Doc. 38 at 3.
[29] *See* Doc. 28-17 at 4.

Therefore, even the assumption that Elmer could not walk or would not have attempted to stand up does not show that Elmer could not have fallen without outside intervention.

The only direct evidence of Defendant's breach of duty that Plaintiffs cite is Elmer's statement to Robert immediately after his fall. In their opposition memorandum, Plaintiffs assert that Elmer said, "[T]he bitch knocked me out of the chair."[30] Plaintiffs do not, however, cite to any evidence in the record containing that statement. The actual statement, as reported by Robert in his deposition, was, "[t]he bitch threw me out."[31] Elmer's words are admissible hearsay under the excited utterance exception.[32] Elmer also asked Sherrie, "Can we see the video? I don't know. How did I fall out of my chair? What happened? Why did I end up on the floor?"[33] The Court finds that Elmer's statements together do not create an issue of material fact. Elmer himself admits that he does not know how he fell from the Rollator. His statement that he was thrown out is therefore mere speculation. Even if Elmer's initial statement were to create an issue of material fact, the Court finds that the totality of the evidence that Plaintiffs have presented could not possibly lead this Court to come to a verdict for Plaintiffs during a bench trial.

Because Plaintiffs can point to no actual evidence that Ryks or any other agent of Defendant breached a duty to Elmer or caused Elmer to fall from the

---

[30] Doc. 38 at 2.
[31] Doc. 29-10 at 6. The Court notes that the unsubstantiated alteration of Elmer's quote appears to favor Plaintiffs—the phrase "knocked me out" better matching Plaintiffs' theory that Ryks inadvertently lifted the Rollator while unfastening a snap than "threw me out"— but will grant Plaintiffs the benefit of the doubt and assume that the error was unintentional.
[32] *See* FED. R. EVID. 801, 803. Defendant argues that the Elmer's statement is inadmissible, but does not provide a basis for that conclusion.
[33] Doc. 29-9 at 11–12.

Rollator, Plaintiffs have failed to carry their burden of proof. Defendant's Motion for Summary Judgment is GRANTED.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss and Motion for Summary Judgment are GRANTED. Plaintiffs' claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 28th day of March, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**